688 December 20, 2023 No. 671

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of M. T.,
a Person Alleged to have Mental Illness.

STATE OF OREGON,
*Respondent,*

*v.*

M. T.,
*Appellant.*

Multnomah County Circuit Court
22CC05796; A179799

Monica M. Herranz, Judge.

Submitted November 6, 2023.

Christopher J. O'Connor and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Dustin Buehler, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

Appellant appeals a judgment involuntarily committing her to the Oregon Health Authority for up to 180 days and an order prohibiting her from possessing firearms on the basis that appellant has a mental disorder that makes her a danger to herself and unable to provide for her basic needs. ORS 426.130; ORS 426.005(1)(f)(A); ORS 426.005(1)(f)(B). In her first assignment of error, appellant argues that the trial court erred when it admitted and considered a precommitment investigation report without the investigator who authored the report being present at the hearing. In her second and third assignments of error, appellant argues that the record is insufficient to support the trial court's finding that, because of her mental disorder, she was a danger to herself and unable to provide for her basic personal needs. In her fourth assignment of error, appellant argues that the trial court erred by ordering the firearm prohibition, because it is contrary to the court's announced findings at the hearing. For the reasons explained below, we affirm.

In her first assignment of error, appellant argues that, pursuant to ORS 426.095(4)(d)(C), the court erred when it admitted and considered the investigation report although the investigator available for cross-examination was not the same investigator who authored the report. Assuming without deciding that this was error, we conclude that any error was harmless. *See State v. Davis*, 336 Or 19, 33, 77 P3d 1111 (2003) (Under Article VII (Amended), section 3, of the Oregon Constitution, we must affirm the judgment below if we determine that there is "little likelihood that the error affected the verdict"). Although the examiner and the trial court referenced the report when questioning appellant, notably, the trial court's ultimate findings did not rely on information from the investigation report, but rather the trial court relied on the testimony that was given at the hearing—including appellant's own testimony that she had very recently been assaulted and raped. *Cf. State v. M. A. B.*, 212 Or App 400, 404-05, 157 P3d 1256 (2007) (reversing commitment when the trial court relied on the inadmissible investigation report, despite the appellant's contrary testimony). Because the trial court's findings are supported by

testimony given during the hearing, and appellant's visible injuries at the time of the hearing, there is little likelihood that the inadmissible report affected the trial court's finding that, because of appellant's mental disorder, she would be at risk of serious harm in the near future.

In her second and third assignments of error, appellant concedes that she has a mental disorder, but she argues that the evidence is insufficient to establish that she is a danger to herself or unable to provide for her basic needs. In reviewing the trial court's ruling, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *State v. M. J. F.*, 306 Or App 544, 545, 473 P3d 1141 (2020) (internal quotation marks omitted). Reviewing under those standards, we conclude that the record was legally sufficient to allow a rational factfinder to conclude that appellant suffered from a mental disorder that makes her a danger to herself and unable to provide for her basic needs.

A person is a danger to self if "the person's mental disorder would cause him or her to engage in behavior that is likely to result in physical harm to self in the near term." *State v. S. S.*, 309 Or App 131, 133, 480 P3d 321 (2021) (quoting *State v. B. B.*, 240 Or App 75, 82, 245 P3d 697 (2010) (internal quotation marks and brackets omitted)). Appellant argues that the trial court's concern that, if released, appellant would be at a substantial risk of assault based on her ongoing refusal to wear clothing is speculative and does not support commitment. With respect to the inherent risk of a woman with a mental disorder being naked in public, we have determined that "a generalized concern that public nudity, combined with outward manifestations of mental illness, [that] would leave appellant vulnerable" to assault "does not meet the legal standard for involuntary civil commitment." *State v. M. B.*, 300 Or App 522, 529, 452 P3d 1006 (2019) (reversing commitment where the appellant engaged in an instance of public nudity, but no one at the appellant's hearing identified a specific threat to appellant's well-being). In contrast, when there is evidence that an appellant has

been recently assaulted, "the serious risk of physical harm to appellant in the near future is not speculative." *State v. N. S.*, 306 Or App 140, 147, 472 P3d 818 (2020) (affirming commitment when the appellant had recently been sexually assaulted, was wandering the streets disoriented, had extremely poor boundaries, was unable to protect herself, and was wearing little or no clothing).

Here, the evidence in the record included testimony that, because of her mental disorder, appellant was refusing medication and showed signs of disorganized thought and responding to internal stimuli. Appellant was taken to the hospital after being found naked in public, and her medical provider testified that appellant continued to refuse to wear clothing most of her time at the hospital. At the hearing, appellant had large bruises on her body and testified that she had been raped and assaulted just a week prior. Considering that evidence as a whole, a rational factfinder could infer that due to appellant's lack of insight, if released, appellant would continue to engage in the same behavior that had led to her recent rape and assault, therefore making it highly probable that she would suffer physical harm in the near term.

Similarly, ORS 426.005(1)(f)(B) defines a person with mental illness to include a person who "is unable to provide for his or her basic personal needs in a way that leaves the person at nonspeculative risk of serious physical harm—meaning that the person's safe survival will be compromised—in the near future." *State v. M. A. E.*, 299 Or App 231, 240, 448 P3d 656 (2019) (internal quotation marks omitted). As discussed above, appellant's lack of insight regarding her recent assault and ongoing refusal to wear clothing in public left appellant at a nonspeculative risk of serious physical harm in the near future. Furthermore, evidence in the record indicated that appellant was refusing medication for her Crohn's disease, had no income, and had no reasonable plan for shelter. Taken as a whole, the record supports the trial court's finding that appellant was unable to meet her basic need for safety.

In her fourth assignment of error, appellant argues that the firearms prohibition reflected in the final order was

a clerical error that should be corrected to reflect the trial judge's contrary statement that such a prohibition would not be ordered. Because a judge's decision regarding the proper disposition may change between the time of the hearing and the final signing of the order, we have concluded that "a trial court's decision is governed by the signed order and not by any statement the judge makes at the conclusion of a proceeding." *State v. Mossman*, 75 Or App 385, 387, 706 P2d 203 (1985) (citing *State v. Swain/Goldsmith*, 267 Or 527, 530, 517 P2d 684 (1974)). However, we have vacated and remanded judgments for correction where the record reveals an obvious clerical error, even if the judgment itself is unambiguous. *See State v. D. Z.*, 274 Or App 77, 80, 359 P3d 1246 (2015) (vacating and remanding an order of civil commitment for correction, where it was apparent from the record that the court had checked the wrong box on the form regarding the basis for the commitment). Unlike in those exceptional cases, here, the evidence and arguments presented at appellant's hearing are not obviously contrary to a decision ordering the prohibition. Although it is plausible that the trial court made a clerical error when entering the final order, it is equally plausible that the court changed its mind regarding the proper disposition of the case. Therefore, we decline to find an exception in this case and affirm the trial court's final order.

Affirmed.